**DETROIT TERRAZZO CONTRACTORS ASSOCIATION and Humbert A. Mularoni, Plaintiffs,**

v.

**BOARD OF TRUSTEES OF THE B.A.C. LOCAL 32 INSURANCE FUND, et al., Defendants.**

**No. 01–CV–70845.**

United States District Court, E.D. Michigan, Southern Division.

Nov. 20, 2001.

---

Jay W. Tower, Sotiroff & Abramczyk, P.C., Bingham Farms, MI, for plaintiffs.

Edward J. Pasternak, Novara, Tesija & Michela, P.L.L.C., Southfield, MI, for defendants.

*MEMORANDUM AND ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANT'S MOTION FOR RECONSIDERATION*

COHN, District Judge.

## I. Introduction

This is an ERISA case. Plaintiffs, the Detroit Terrazzo Contractors Association (DCTA) and Humbert A. Mularoni (Mularoni) are suing defendants, the Board of Trustees of the B.A.C. Local 32 Insurance Fund, Ronald B. Capp, John Mason, Michael Mauri, Robert Michielutti, Sr., Timothy Ochalik, George Stripp, Terry Van Allen, and Robert Wilson (collectively, the trustees) claiming that they breached their fiduciary duties in violation of 29 U.S.C. § 1104(a)(1)(D) (count 1) and 29 U.S.C. § 1104(a)(1) (count 2), which provide in combination and in part that "a fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and... in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with

1. DTCA is an employer association.

2. As stated in plaintiff's complaint Mularoni is "a participant in the Fund [the B.A.C. Local 32 Insurance Trust Fund, referred to as the

the provision of this subchapter and subchapter III of this chapter."

Essentially, DTCA[1] and Mularoni[2] say that when the board of trustees of the B.A.C. Local 32 Insurance Trust Fund (the Trust) executed the "Fifth Amendment to the B.A.C. Local No. 32 Insurance Fund Agreement and Declaration of Trust, (the Amendment)" entitled "Change in Sponsoring Employer Association," to amend the definition of "association" by removing DTCA and adding the *Greater* Detroit Terrazzo and Contractors Association (Greater DCTA) violated their fiduciary duties under ERISA because the Amendment effectively removed DCTA's appointed trustee and removed DCTA's power, as a sponsoring association, to appoint a trustee and gave these powers to Greater DCTA, all in contravention of the Trust Agreement. The trustees filed an answer denying that their actions violated ERISA.

The following motions were then filed:
- Defendants' Motion to Dismiss Detroit Terrazzo Contractors Association for Lack of Subject Matter Jurisdiction and/or Standing
- Defendants' Supplemental Motion to Dismiss both Plaintiffs and/or Motion for Summary Judgment
- Plaintiffs' Cross Motion for Summary Judgment

A hearing was held on these motions on August 29, 2001, at which time the Court stated, *inter alia*, that "any action taken [regarding the adoption of the Amendment] where the employer trustees abstained is void." *See* Transcript of Motion Hearing, dated August 29, 2001, at p. 16. The parties were directed to submit a pro-

Trust in this Memorandum and Order] within the meaning of ERISA...." While it is unclear whether Mularoni is a participant as an employee or as an employer, his status is not challenged.

posed order memorializing this finding. On October 19, 2001 the Court entered a stipulated order, which states in part:

> [A]lthough the provisions of the B.A.C. Local 32 Insurance Fund's Agreement and Declaration of Trust authorize the Trustees to amend same. The abstention of the employer trustees in the vote to adopt the amendment at issue in this matter voids such action.
>
> Now, therefore, it is ordered that the "Fifth Amendment to the B.A.C. Local No. 32 Insurance Fund Agreement and Declaration of Trust," dated April 12, 2000 and amending Section 1.3 of the Trust by substituting the phrase "Greater Detroit Terrazzo Contractors Association" for the phrase "Detroit Terrazzo Contractors Association" is void *ab initio*.

The parties were also directed to advise the Court as to what issues remain pending in light of the stipulated order.

The parties have now filed supplemental papers as directed. Plaintiffs say that the stipulated order resolves the litigation and consequently, no issues remain and there are no pending motions.

The trustees, on the other hand, believe that "the core issues remain pending" in the case. The trustees say that plaintiffs have not claimed that they failed to follow proper voting procedures, but that defendants' actions violated ERISA. The trustees further maintain that executing the Amendment was not a fiduciary function and therefore was not a violation of ERISA. Additionally, the trustees filed a Motion for Reconsideration, arguing that the vote to adopt the Amendment was carried out in accordance with the provisions in the Trust Agreement, and Robert's Rules of Order (which are incorporated into the Trust Agreement) and that it was not a fiduciary act. Finally, the trustees again state that plaintiffs never argued that the vote was improper as the Court

ruled; rather, they have argued that the trustee's actions violated ERISA.

Because the parties are unable to agree on the status of the case in light of the Court's statements at the hearing and stipulated order, following is a resolution of the question, taking into account the parties' arguments in their dispositive motions and in the motion for reconsideration.

## II. Background

On March 14, 1991, the Tile Marble and Terrazzo B.A.C. Local 32 (the Union) and three employer associations, (1) plaintiff DCTA, (2) the Ceramic Tile Contractors Association, and (3) the Association of Marble Contractors and Fabricators, Inc., entered into the Trust Agreement to establish the Trust to provide welfare and other benefits received and accepted under a collective bargaining agreements (CBAs) between the employer associations and the Union. The employer associations and the Union are therefore the sponsors of the Trust. The Trust Agreement defines the term "association" to collectively refer to the above three employer associations. Each "association" is given the power to appoint a trustee and the Trust is governed by a five member board of trustees, consisting of one appointed member from each of the three employer associations (the Employer Trustees) and two elected members from the Union (the Union Trustees). The Trust Agreement is signed by authorized representatives for the Union and the three employer associations, as well as the two Union Trustees and the three Employer Trustees.

On April 12, 2000, the board of trustees, who for reasons that are unclear are now eight in number, had a meeting where the following trustees were present: Robert Wilson, the Chairman, John Mason, Tim Ochalek (Union trustees), and John Lanzetta, Secretary, Ron Capp, and Robert Michielutti (Employer Trustees). Trustee

George Stripp was absent. Also present were two administrators and legal counsel. At the meeting, the board of trustees adopted the Amendment, which provides in relevant part:

> WHEREAS, Article XI of the B.A.C. Local No. 32 Insurance Fund Agreement and Declaration of Trust[3] authorizes the Fund's Trustees to amend the Trust Agreement from time to time; and

> WHEREAS, the Trustees wish to recognize the sponsorship of the newly created Greater Detroit Terrazzo Contractors Association, which has been established to bargain on behalf of member employers formerly represented by the Detroit Terrazzo Contractors Association, and so to participate in the appointment of Employer Trustees to the Board of Trustees of the B.A.C. Local No. 32 Insurance Fund.

> Accordingly, the following provisions of the Trust are amended as follows, effective as of the above date (substantive changes are indicated by underlined text, and deletions are indicated by strikeout):

> * * *

> ARTICLE I

> DEFINITIONS

> * * *

> Section 1.3 Association. "Association" collectively refers to the Detroit Ceramic Tile Contractors Association, the Detroit Contractors Association, Greater Detroit Contractors Association,

and the Association of Marble Contractors and Finishers, Inc., or any successor entity or entities.

> . * * * .

> Except as has been hereby provided, the B.A.C. Local No. 32 Insurance Fund Agreement and Declaration of Trust shall remain in full force and effect.

The Amendment is signed by four Union Trustees, Robert Wilson, John Mason, Terry Van Allen,[4] and Tim Ochalik, and four Employer Trustees, John Lanzetta, Robert Michielutti (who was DCTA's appointed trustee), George Stripp,[5] and Ron Capp. As seen above, the Amendment removed the DCTA as from the definition of "association" and added the *Greater* Detroit Terrazzo and Contractors Association (Greater DCTA) as an "association."

According to the minutes of the meeting on April 12, 2000, the events leading up the Amendment were as follows: the Chairman, Robert Wilson, advised the board of trustees that the Union had signed a new CBA with a new terrazzo association, the *Greater* DCTA, which had more employer members and covered employees, than DCTA, which consisted of only one member. DCTA's designated and appointed trustee, Robert Michielutti, stated he had withdrawn from the DCTA and was now a part of the *Greater* DCTA and therefore announced he would be resigning as a trustee appointed by DCTA. Thereafter, legal counsel[6] advised that the board of trustees may want to amend the Trust Agreement to recognize the Greater

---

3. Article XI generally provides that the Trustees can amend the Trust Agreement by majority vote provided that no amendment diverts the Trust Fund to an improper purpose, nor dilutes the voting strength of either the Employer or Union Trustees.

4. Although Terry Van Allen signed the Amendment, there is no indication that he

was present at the meeting, nor was he reported absent from the meeting.

5. Although George Stipp signed the Amendment, he was reported absent at the meeting.

6. Lorrey Michela is listed as counsel for the Trust, and is counsel of record for defendants in this case.

DCTA as a sponsoring employer association. At that point, the Amendment was discussed.

The three Employer Trustees present at the meeting, Robert Michielutti, Ron Capp, and John Lanzatta abstained from the vote. The three Union Trustees present at the meeting, Robert Wilson, John Mason, and Tim Ochalik voted for the Amendment. Thereafter, all of the trustees present at the meeting signed the Amendment and the Chairman announced that the Board had received a letter from the Greater DCTA, who by the Amendment was now an "association" under the Trust Agreement with the power to appoint a trustee, appointing Robert Michielutti as its designated trustee. At some point thereafter, the trustees not present at the meeting signed the Amendment.[7]

In addition, also in April, trustees of the Trust's sister funds—the Tile, Terrazzo & Marble Industry Pension Fund, the Tile, Terrazzo & Marble Industry Vacation–Holiday Fund, and the Tile, Terrazzo & Marble Industry Defined Contribution Pension Fund—(which appear to be the same trustees) enacted similar amendments substituting sponsorship of their trust funds to effect the same change in sponsorship from DCTA to Greater DCTA. Plaintiffs have not challenged these trust fund amendments, which plaintiffs say are irrelevant to their claims in this case.

Unhappy about the Amendment, on March 2, 2001, DCTA filed suit against the trustees claiming that their actions in amending the Trust Agreement violated the terms of the Trust Agreement and ERISA. It is undisputed that the Trust is a benefit plan governed by ERISA.

## III. Legal Standards

### A. Motion to Dismiss

When analyzing a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6), the Court must take a plaintiff's well-pleaded allegations as true. *Miree v. DeKalb County*, 433 U.S. 25, 27 n. 1, 97 S.Ct. 2490, 53 L.Ed.2d 557 (1977). "[W]hen an allegation is capable of more than one inference, it must be construed in the plaintiff's favor." *Sinay v. Lamson & Sessions Co.*, 948 F.2d 1037, 1039–40 (6th Cir.1991). "A court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984).

### B. Motion for Summary Judgment

Summary judgment will be granted when the moving party demonstrates that there is "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). There is no genuine issue of material fact when "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

The Court must decide "whether the evidence presents a sufficient disagreement to require submission to a fact finder or whether it is so one-sided that one party must prevail as a matter of law." *In re Dollar Corp.*, 25 F.3d 1320, 1323 (6th Cir.1994) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). The Court "must view the evidence in the light most favorable to the non-moving party." *Employers Ins. of Wausau v. Petroleum Spe-*

---

7. See n. 5 and 6, *supra*.

*cialties, Inc.*, 69 F.3d 98, 101 (6th Cir. 1995).

### IV.  Analysis

### A.  Standing

#### 1.

The trustees raised the question of whether DCTA is a "fiduciary" within the meaning of ERISA such that it has standing to file suit against defendants.[8] ERISA allows only certain entities the ability to commence an action. Under 29 U.S.C. §§ 1132(a)(2) and (3), a claim can be commenced, "by the Secretary, or by a participant, beneficiary or fiduciary for appropriate relief ..." or, "by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan."

■ The term fiduciary is defined under § 29 U.S.C. § 1002(21)(A), which states: "a person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, ... or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan." The ERISA definition is very broad, and whether a given individual is found to be a fiduciary often turns upon the facts and circumstances of a specific situation. Barbara J. Coleman, *Primer on ERISA*, 96 (4th ed.1993). Moreover, an Interpretive Bulletin issued by the Department of Labor states that, "a trustee of a plan must, be [sic] the very nature of his position, have 'discretionary authority or discretionary responsibility in the administration' of

the plan within the meaning of ... the Act. Persons who hold such positions will therefore be fiduciaries." 29 C.F.R. § 2509.75–8. Fiduciary activity is limited to "discretionary acts of plan 'management' and 'administration.'" *Varity Corp. v. Howe*, 516 U.S. 489, 116 S.Ct. 1065, 134 L.Ed.2d 130 (1996).

Here, DCTA is an employer association and although not specifically defined as such, the parties agree DCTA was one of the employer associations that originally sponsored the Trust. Under the Trust Agreement, DCTA, as an "association" had the authority to appoint one Employer Trustee to the board of trustees (here-Michielutti) who administered the Trust. Under the terms of the Trust Agreement, DCTA could not remove a trustee on its own, but could participate in the removal, which requires a resolution of the employers. *See* Section 8.5. An "employer" is defined as all employers having a CBA with the Union, which would include DCTA. *See* Section 1.7. Thus, the question is whether DCTA is a "fiduciary" based on its power to appoint a trustee and participate in removing a trustee, *i.e.* do DCTA's powers constitute "discretionary authority" over the management or administration of the Trust within the meaning of § 1002(21)(A).

DCTA relies on *Coyne & Delany Co. v. Selman*, 98 F.3d 1457, 1465 (4th Cir.1996), where the Court of Appeals for the Fourth Circuit held that a plan sponsor was a fiduciary entitled to bring suit under ERISA because it had, "the power (through plan amendment) to appoint, retain and remove plan fiduciaries constitutes 'discretionary authority' over the management or administration of a plan within the meaning of [29 U.S.C.] § 1002(21)(A).... Moreover this authority

---

**8.** The trustees do not contest whether Mularo-     ni has standing.

carries with it a duty 'to monitor appropriately' those subject to removal."

### 2.

▮ Here, as in *Coyne*, prior to the Amendment, DCTA had the power to appoint a trustee to the board of trustees and the power to participate in removing trustees. However, unlike *Coyne*, DCTA did not retain the power to amend the Trust-that power is for the trustees alone. *See* Section 11.2. Although the question is close, DCTA has standing under ERISA inasmuch as its power to appoint a trustee constitutes "discretionary authority or discretionary control" over the management of the Trust, therefore DCTA is included in the definition of a fiduciary under 29 U.S.C. § 1002(21)(A).

### B. The Vote

### 1.

▮ The trustees have also argued that the Amendment was proper. Article VIII sets forth voting requirements, as follows:

> **Section 8.9 Majority Vote.** Any decision of the Trustees shall be made by a majority of the votes cast by the Trustees attending the meeting.... All meetings shall be conducted in accordance with Robert's Rules of Order....

The trustees are correct in that Robert's Rules of Order provides that "Abstentions have no effect on calculation of votes. (When a ballot is marked "abstain," it is considered a blank.)" And, "[w]hen a quorum is present, a majority vote, that is a majority of the votes cast, ignoring blanks, is sufficient for the adoption of any motion that is in order." *See* Ex. 5 to The trustee's Motion for Reconsideration.

Here, because there were six trustees present at the meeting, three abstained from the vote and three voted for the Amendment. Because the abstained votes do not count and a majority of the votes cast, indeed all of them, were in favor of the Amendment, it would appear that the

vote was not procedurally improper. However, the problem with the vote lies not so much in the fact that the three Employer Trustees abstained *per se*, but that they abstained under the circumstances. As explained above, the Amendment effectively removed DCTA's appointed trustee, removed DCTA's power to appoint a trustee, and gave DCTA's appointment power to the Greater DCTA. DCTA was also removed as a sponsoring employer association of the Trust and Greater DCTA named in its place. Such action was wholly contrary to the provisions of the Trust Agreement regarding the appointment and replacement of trustees and because of this, the Employer Trustees had an affirmative obligation not to abstain from the vote.

The Trust Agreement confers upon the trustees broad power to amend the Trust. Article XI, governs Amendments, and states:

> **Section 11.1 Power to Amend.** It is anticipated that in the administration of this Trust, conditions may arise that are not foreseen at the time of the execution of this Agreement and it is the intention of the Parties that the ***power of amendment,*** which is hereinafter given, ***be exercised in order to carry out the provisions of this Trust*** to further effectuate its purposes.
>
> **Section 11.2 Trust Amendments.** This Agreement may be amended to any extent at any time, and/or from time to time, by the majority vote of all the Trustees except that no amendment shall divert the Trust Fund as then constituted or any part thereof to a purpose other than the purposes set forth in this Agreement, nor shall there be any amendment as the result of which the Employer Trustees and the Union Trustees would have unequal voting strength with respect to any function

that the Board of Trustees may undertake in the operation and administration of the Trust.

**Section 11.3 Procedure for Amendment of Trust.** Any action taken by the Trustees pursuant to Section 11.2 may be taken at a meeting called in accordance with the provisions of Section 8.7 of this Agreement or writing by all Trustees without meeting.

To be sure, the trustees have the power to amend the Trust and Trust Agreement. However, as noted above, the power to amend must be exercised in order to carry out the provisions of the Trust Agreement. Here, the Trust Agreement specifically provides for the *election* and *removal* of trustees, and Employer Trustees, under Article VIII. Section 8.1 provides in part:

**Election of Trustees.** The three Associations named herein shall each appoint one Trustee.... These Trustees, and their successors, each for himself, except their appointment of election as Trustees and consent to act as Trustees and on the Board of Trustees as Administrator, hereunder, and declare and agree that they will receive and hold the Insurance Fund as Trustees under and by virtue of the terms, conditions and provisions of this Trust Agreement and for the uses, purposes and trusts and with the powers and duties herein set forth and none other.

Section 8.3 provides:

**Term.** Each Trustee shall serve until his death, incapacity, resignation or removal.

Section 8.4. provides:

**Resignation.** A Trustee may resign and become and remain fully discharged from all further duty or responsibility hereunder upon giving 30 days' notice, in writing, to the remaining Trustees, or such shorter notice as the remaining Trustees may accept as sufficient. In which notice, there shall be stated a date when such resignation shall take effect, and such resignation shall take effect on the date specified in the notice unless a successor Trustee shall have been appointed at an earlier date, in which event, such resignation shall be effective immediately upon the appointment of such successor Trustee.

Section 8.5 provides in part:

**Removal.** Any employer Trustee may be removed from office at any time by a resolution of the Employers, in writing, and delivered to all of the Trustees at the office of the Fund....

Section 8.6 provides in part:

**Successor Trustee....** In case any Employer Trustee shall become incapacitated, die, resign, or be removed, a successor Employer Trustee shall be appointed forthwith, such appointment to be evidenced by an instrument, in writing, signed by the authorized representative of the Employers and delivered to the Trustee.

### 2.

■ Here, by adopting the Amendment, all of the trustees violated the above provisions because the Amendment effectively removed DCTA's trustee and gave DCTA's power of appointment, and status as a sponsoring employer association, to the Greater DCTA. As indicated at the hearing, the trustees' actions, both the Union Trustees in *voting for* the Amendment, and the Employer Trustees *in abstaining from the vote* and "signing on" after-the-fact, were equally culpable. The Amendment was therefore void as it violated the express provisions of the Trust Agreement.

### B. Fiduciary Act

### 1.

■ The next question is whether the actions of the trustees, which the violated

the express provisions of the Trust Agreement, constitute a fiduciary act for which they would be liable under ERISA. The trustees of an ERISA plan have well-defined fiduciary duties to the plan. *See* 29 U.S.C. §§ 1104–06. However, every action a trustee takes is not necessarily a fiduciary act. *See Klosterman v. W. Gen. Mgmt., Inc.*, 32 F.3d 1119, 1122 (7th Cir. 1994). In *Lockheed v. Spink, supra,* the Supreme Court confirmed and extended to pension plans the longstanding rule that " 'only when fulfilling certain defined functions, including the exercise of discretionary authority or control over plan management or administration,' does a person become a fiduciary under § 1002(21)(A)." *Lockheed*, 517 U.S. at 889, 116 S.Ct. 1783 (*quoting Siskind v. Sperry Retirement Program, Unisys*, 47 F.3d 498, 505 (2d Cir.1995)). The Supreme Court explained:

> Each of respondents' fiduciary duty claims must fail because ERISA's fiduciary provisions are inapplicable to the amendments. This conclusion follows from our decision in *Spink*, where we considered whether amending a plan to require the conditioning of benefit payments under an early retirement program on the participants' release of employment-related claims was a prohibited transaction under ERISA § 406(a). 517 U.S., at 885, 116 S.Ct. 1783, 135 L.Ed.2d 153. We explained:
>> "Plan sponsors who alter the terms of a plan do not fall into the category of fiduciaries. As we said with respect to the amendment of welfare benefit plans, '[e]mployers or other plan sponsors are generally free under ERISA, for any reason at any time, to adopt, modify, or terminate welfare plans.' When employers undertake those actions, they do not act as fiduciaries, but are analogous to the settlors of a trust."

517 U.S. at 890, 116 S.Ct. 1783 (quoting *Curtiss–Wright Corp. v. Schoonejongen,* 514 U.S. 73, 78, 115 S.Ct. 1223, 131 L.Ed.2d 94 (citations omitted)).

In *Hughes Aircraft Co. v. Jacobson, supra,* the Supreme Court reaffirmed the holding in *Spink* and extended it to the context of amendments to plans that are supported by employee contributions, stating that the applicability of ERISA's fiduciary duty provisions depends on "whether the employer's act of amending its plan constituted an exercise of fiduciary duty.... In general, an employer's decision to amend a pension plan concerns the composition or design of the plan itself and does not implicate the employer's fiduciary duties which consist of such actions as the administration of the plan's assets." *Hughes Aircraft*, 525 U.S. at 444, 119 S.Ct. 755.

■ Thus, the court must examine the conduct at issue to determine whether it constitutes "management" or "administration" of the plan, giving rise to fiduciary concerns, or merely a business decision that has an effect on an ERISA plan not subject to fiduciary standards. *Hunter v. Caliber Sys., Inc.*, 220 F.3d 702, 718 (6th Cir.2000) (citing *Sengpiel v. B.F. Goodrich Co.*, 156 F.3d 660, 666 (6th Cir.1998) ("[T]he fact that an action taken by an employer to implement a business decision may ultimately affect the security of employees' welfare benefits does not automatically render the action subject to ERISA's fiduciary duties."); *Akers v. Palmer*, 71 F.3d 226, 231 (6th Cir.1995) ("ERISA does not require that day-to-day corporate business transactions, which may have a collateral effect on prospective, contingent employee benefits, be performed solely in the interest of plan participants.... [O]nly discretionary acts of plan management or administration, or those acts designed to carry out the very purposes of the plan, are subject to ERISA's fiduciary duties.")).

### 2.

■ As noted above, the Amendment contravened the express provisions of the Trust Agreement regarding removal and appointment of trustees. Although the trustees' actions could be viewed along the lines of altering the composition of the Trust in terms of plan sponsorship, which under *Lockheed* and *Hughes Aircraft,* is not a fiduciary act, the Court finds otherwise. In viewing the circumstances surrounding the Amendment as a whole, the trustees' actions altered the makeup of the board of trustees and were against the specific provisions of the Trust regarding the removal and appointment of trustees. The trustee's actions affected the management and administration of Trust assets because it altered the composition of the trustees responsible for managing the Trust assets. The Amendment is a fiduciary act. As such, because the trustees violated provisions of the Trust Agreement in voting for the Amendment (in the case of the Union Trustees) and in abstaining from voting on the Amendment and later agreeing to it (in the case of the Employer Trustees), their actions violate § 1104.

### 3.

The obligations imposed by ERISA have the familiar ring of their source in the common law of trusts. *See Central States, Southeast & Southwest Areas Pension Fund v. Central Transport, Inc.,* 472 U.S. 559, 570, 105 S.Ct. 2833, 86 L.Ed.2d 447 (1985) ("[R]ather than explicitly enumerating all of the powers and duties of trustees and other fiduciaries, Congress invoked the common law of trusts to define the general scope of their authority and responsibility"). In the words of Justice Cardozo, then Chief Judge of the New York Court of Appeals, commenting on the nature of a trustee's common law obligation: "Many forms of conduct permissible in a workaday world for those acting at arm's length, are forbidden to those bound by fiduciary ties. A trustee is held to something stricter than the morals of the market place. Not honesty alone, but the punctilio of an honor the most sensitive, is then the standard of behavior." *Meinhard v. Salmon,* 249 N.Y. 458, 464, 164 N.E. 545, 546 (1928). The trustees here acted more in line with the morals of the market place instead of adhering to their fiduciary obligation to act in accordance with provisions of the Trust Agreement.

### V. Conclusion

Plaintiffs' motion for summary judgment is GRANTED.

Defendants' motion to dismiss is DENIED.

Defendants' supplemental motion to dismiss or for summary judgment is DENIED.

Defendants' motion for reconsideration is DENIED.

This case is at an end.

SO ORDERED.