Thomas W. BURKE, as Chairman of the Trustee of, and a participant in, The Buffalo Carpenters Pension Fund, Curtis Zamerski, and Richard Kohl, Plaintiffs,

v.

Terrence L. BODEWES, James Maloney, Vincent Fetes, Ernest Bouchard, Thomas Herr, Daryl Bodewes, George Ferraro, and James Biddle, Sr., personally and in their capacities as Trustees and plan fiduciaries, Defendants.

No. 00–CV–65C.

United States District Court, W.D. New York.

Feb. 28, 2003.

Levy, Ratner & Behroozi, PC, New York, NY (Richard A. Levy, Owen M. Rumelt, of Counsel), for Plaintiffs.

Boylan, Brown, Code, Vigdor & Wilson, LLP, Rochester, NY (Louis J. Micca, Mark A. Costello, of Counsel), for Defendants Terrence L. Bodewes, James Maloney, and Ernest Bouchard.

Michael W. Rickard, II, for Defendant Vincent Fetes.

## OPINION

CURTIN, District Judge.

Plaintiffs Thomas W. Burke, Curtis Zamerski, and Richard Kohl, as trustees of and/or participants in the Buffalo Carpenters Pension Fund (the "Fund"), brought this action pursuant to section 502 of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1132, seeking equitable relief and damages for alleged breach of fiduciary duty by eight current and former trustees of the Fund.[1] Four of the defendants—Terrence L. Bodewes, James Maloney, Ernest Bouchard, and Vincent Fetes (referred to herein as the "moving defendants")—have moved for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure seeking dismissal of plaintiffs' claims insofar as they pertain to (1) fiduciary conduct occurring more than six years prior to the filing of the complaint, (2) conduct occurring af-

ter the defendants ceased their service as trustees, and (3) conduct involving amendment of the Fund to increase pension benefits (*see* Items 90 and 95).

For the following reasons, defendants' summary judgment motions are denied.

## BACKGROUND

As described in the pleadings, the Fund is a collectively bargained, multi-employer pension fund jointly administered pursuant to Section 302(c)(5) of the Labor Management Relations Act ("LMRA" or "Taft–Hartley"), 29 U.S.C. § 185(c)(5). It is also an "employee pension plan" as defined in ERISA at 29 U.S.C. § 1002(2) (Item 14, ¶ 14). The Fund was formed in 1961 to provide pension benefits to members of Buffalo Carpenters Local 9 (the "Union") based on length of service, retirement age, and other specified criteria. Participating employers are responsible for making contributions to the Fund, in amounts negotiated in collective bargaining agreements between the Union and the employers, that are sufficient to pay for the prescribed benefits currently and in the future (*see id.,* ¶ 17).

At one time, the Fund had more than 1,400 active participants. However, changing demographics and employment conditions in the Buffalo area over the

1. The original complaint was filed on January 19, 2000, and an amended complaint was filed on April 17, 2000 (Item 14), pursuant to this court's order of April 7, 2000 (Item 9) allowing plaintiffs to make certain insubstantial changes to the original pleading. In addition to the ERISA breach of fiduciary duty claims, the original and amended complaints also asserted claims against the Segal Company, the Fund's former actuary and consultant, pursuant to state common law for negligence, professional malpractice, and misrepresentation, and the defendant trustees asserted cross-claims against Segal for contribution

and indemnity. In a decision and order dated June 21, 2002, this court dismissed these claims and cross-claims with prejudice upon approval of a settlement agreement entered by plaintiffs and Segal on May 10, 2002 (see Item 150). Also, by stipulation and order signed by the court on October 25, 2001 (Item 123), Thomas W. Burke (current Chair of the Board of Trustees of the Fund) voluntarily withdrew his causes of action against the Fund trustees, leaving Fund participants Curtis Zamerski and Richard Kohl as the named plaintiffs in this action. The caption shall be amended to reflect the change.

years led to the severe contraction of the active membership. As alleged in the complaint, as of June 1, 1998, the Fund had only 527 active participants, while at the same time there were 980 retirees receiving pension benefits under the plan (*id.*, ¶ 3). As a result, since at least 1989, the Fund was only able to meet its minimum funding requirements by "borrowing" future contributions and applying them to the previous year, ostensibly in accordance with the minimum pension plan funding and waiver provisions of ERISA and the Internal Revenue Code (*id.*, ¶¶ 17–18).

Plaintiffs allege that, despite the continuous funding deficiencies and other warning signs indicating that the Fund was in serious financial trouble, the trustees regularly approved increases of pension benefits for retired employees and took other actions in breach of their fiduciary duties with respect to the Fund. More specifically, plaintiffs allege that between 1983 and 1998 the trustees improved benefits payable pursuant to the plan on an almost annual basis, without fully evaluating whether or not the Fund could afford the improvements or recommending commensurate increases in the rates of employer contributions (*see id.*, ¶¶ 36–37). Plaintiffs assert the following six causes of action against the trustees pursuant to the "prudent person" standard of care set forth in ERISA's fiduciary duty provisions at 29 U.S.C. § 1104(a)(1)(B):

1. Failure to review, verify, and make adjustments for inaccurate actuarial information provided by the Segal Company in its annual Fund valuation reports.

2. Failure to monitor the financial status of the Fund.

3. Failure to consider the financial condition of the Fund when implementing pension benefit improvements between the years 1983 and 1998.

4. Failure to prudently oversee investments.

5. Failure to implement policies or guidelines for collection of delinquent contributions by employers.

6. Failure to adequately collect delinquent contributions.[2]

(*Id.*, ¶¶ 58–74).

Defendants Terrence L. Bodewes, James Maloney, Ernest Bouchard,[3] and Vincent Fetes, all former trustees, now move for summary judgment. As alleged in the amended complaint, Bodewes served as trustee from 1985 to July 1, 1996, and Maloney, Bouchard, and Fetes served as trustees from 1985 to September 1, 1994. The moving defendants seek summary judgment on the following grounds:

1. ERISA's "statute of limitation and repose," 29 U.S.C. § 1113, bars plaintiffs' claims based on acts occurring before January 19, 1994.

2. ERISA expressly provides that "[n]o fiduciary shall be liable with respect to a breach of fiduciary duty under this subchapter if such breach was committed . . . after he ceased to be a fiduciary." 29 U.S.C. § 1109(b).

---

**2.** Plaintiffs also claim that, to the extent that the failure to collect delinquencies constituted an extension of credit between the Plan and the employers, the trustees violated ERISA's prohibited transaction provisions set forth at 29 U.S.C. §§ 1106(a)(1) and 1106(b)(2).

**3.** Ernest Bouchard died in June 2001. Notice of death was filed on October 16, 2001(Item

121). Since no motion for substitution of proper party was made by plaintiffs within 90 days after suggestion of death upon the record, "the action shall be dismissed as to the deceased party" pursuant to Fed.R.Civ.P. 25(a)(1). The caption shall be amended accordingly.

3. Amendment of a pension plan to provide increased benefits is not an exercise of fiduciary duty actionable under ERISA.

Each of these grounds is discussed in turn below.

## DISCUSSION

### I. Summary Judgment

The standard for summary judgment under Rule 56 is a familiar one. A motion for summary judgment may be granted only when it is shown that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying [which materials] . . . it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp.*, 477 U.S. at 323, 106 S.Ct. 2548. A fact is "material" only if the fact "might affect the outcome of the suit under the governing law . . . ." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A dispute regarding a material fact is "genuine . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

To defeat the summary judgment motion, the nonmoving party must produce sufficient evidence to establish a genuine issue of material fact for trial. *See Celotex*, 477 U.S. at 322, 106 S.Ct. 2548. The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Indeed, the nonmoving party cannot defeat the motion "merely by vaguely asserting the existence of some unspecified disputed material facts, or . . . through mere speculation or conjecture." *Western World Ins. Co. v. Stack Oil, Inc.*, 922 F.2d 118, 121 (2d Cir.1990) (citations and quotations omitted). Instead, the opposition "must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P.56(e); *see Cooper Industries, Inc. v. Agway, Inc.*, 987 F.Supp. 92, 105 (N.D.N.Y.1997).

### II. ERISA's Statute of Limitations

The statute of limitations for breach of fiduciary duty actions brought under ERISA provides:

No action may be commenced under this subchapter with respect to a fiduciary's breach of any responsibility, duty, or obligation under this part, or with respect to a violation of this part, after the earlier of-

(1) six years after (A) the date of the last action which constituted a part of the breach or violation, or (B) in the case of an omission, the latest date on which the fiduciary could have cured the breach or violation, or

(2) three years after the earliest date on which the plaintiff had actual knowledge of the breach or violation;

*except that in the case of fraud or concealment, such action may be commenced not later than six years after the date of discovery of such breach or violation.*

29 U.S.C. § 1113 (emphasis supplied). Relying on the language in § 1113(1)(A), the moving defendants contend that plaintiffs' claims against them are time-barred to the extent those claims are based on fiduciary conduct alleged to have occurred before January 19, 1994, six years prior to the filing of this action.

Plaintiffs, on the other hand, rely on ERISA's separate "discovery" statute of limitations for claims of "fraud or concealment" (quoted in italics above), allowing as timely claims brought within six years from the date of discovery of the breach. They argue that the trustees implemented regular pension benefit increases notwithstanding the precarious financial condition of the Fund, and in doing so knowingly concealed the true status of the Fund from participants. According to plaintiffs, it was not until Thomas W. Burke became Chairman of the Fund's Board of Trustees in 1999 that the lack of prudent oversight on the part of the former trustees was discovered, and the statute began to run.

Plaintiffs rely primarily on the Second Circuit's holding in *Caputo v. Pfizer, Inc.,* 267 F.3d 181 (2d Cir.2001). *Caputo* arose in connection with Pfizer's downsizing of its Groton, Connecticut plant. The plaintiffs, retirees who had worked for Pfizer for many decades, claimed that Pfizer breached its fiduciary duties under ERISA by fraudulently concealing the anticipated extension of "golden handshakes" (financial packages designed to provide an incentive for early retirement) to employees who retired at a later date. The plaintiffs claimed that they had retired in early 1991 only after repeatedly being advised that such incentives would not be offered in the near future, even though management planned to do just that. Indeed, in November 1991 (after the plaintiffs had retired), Pfizer formally announced that it was offering the incentive package to employees still working at the Groton plant. The plaintiffs learned of the offer shortly thereafter, but did not file suit until October 1996. They claimed they never knew the full extent of the supposed cover-up until another former employee sued the company and, through discovery, learned that Pfizer had allegedly lied about its plans. *Caputo,* 267 F.3d at 185–87.

The trial court dismissed the case as barred by the three-year limitations period set forth at § 1113(2) of ERISA, finding that the plaintiffs had actual knowledge of Pfizer's alleged wrongdoings when they learned of the "golden handshakes" shortly after they retired. *Caputo v. Pfizer, Inc.,* 89 F.Supp.2d 237, 239 (D.Conn.2000). The trial court also found that the plaintiffs were not entitled to the benefit of ERISA's six-year limitations period for breach of fiduciary duty actions involving fraud or concealment because the complaint failed to plead fraud with the particularity required under Fed.R.Civ.P. 9(b). *Id.* at 240.

The Second Circuit reversed, describing ERISA's breach of fiduciary duty statute of limitations as "enigmatic—almost chimerical ...," *Caputo,* 267 F.3d at 184, "[h]eld together by chewing gum and baling wire." *Id.* at 188. Pfizer argued on appeal that the six-year statute of limitations period is available only in actions where "the plaintiff alleges that the defendant engaged in conduct intended to hide its breach of fiduciary duty, thereby preventing the plaintiff's discovery of the underlying breach." *Caputo,* 267 F.3d at 188. In support, Pfizer relied on decisions from several circuits that had equated ERISA's "fraud or concealment" provision with the "fraudulent concealment" rule under the common law doctrine of equitable estoppel. *See, e.g., Kurz v. Philadelphia Elec. Co.,* 96 F.3d 1544, 1552 (3d Cir.1996) (statute of limitations tolled until plaintiff exercising reasonable diligence discovered or should have discovered alleged fraud or concealment); *J. Geils Band Employee Benefit Plan v. Smith Barney,* 76 F.3d 1245, 1255 (1st Cir.1996) (limitations period tolled where plaintiff demonstrates that defendant engaged in conduct designed to conceal alleged wrongdoing, and that plaintiffs had no actual or constructive no-

tice of wrongdoing despite their exercise of reasonable diligence).

The Second Circuit declined to adopt this equation for several reasons. First, the court noted that "the genesis of this uniformly adopted theory is a footnote in a district court opinion that cites no legal support for the proposition." *Caputo*, 267 F.3d at 189 & n. 2 (citing *Foltz v. U.S. News & World Report, Inc.*, 663 F.Supp. 1494, 1537 n. 66 (D.D.C.1987)). Second, the court explained that there is no tolling aspect to the "fraud or concealment" clause of ERISA, as there is in the theory underlying the concealment rule. "[R]ather, it prescribes a separate statute of limitations of six years from the date of discovery." *Id.* at 189. Third, the court found that principles of statutory construction counseled strongly against merging the terms "fraud" and "concealment," as Pfizer's argument urged. Because the statute used the terms "fraud *or* concealment" in the disjunctive, the court was required to give each term an independent significance. Relying on Black's Law Dictionary, the court defined "fraud" as a false representation of fact by words, conduct or concealment of that which should have been disclosed, which is intended to deceive and does so causing legal injury. "Concealment" was defined as "[a] withholding of something which one knows and which one, in duty, is bound to reveal," *id.*, and "concealment of a cause of action" was defined as follows:

"To constitute it so as to prevent running of a limitations, some trick or artifice must be employed to prevent inquiry or elude investigation, or to mislead and hinder [a] party who has a cause of action from obtaining information, and acts relied on must be of an affirmative character and fraudulent."

*Id.* at 190 (quoting BLACK'S LAW DICTIONARY 361) (Rev. 4th ed.1968).

Based on this etiology, the court formulated the following rule:

[T]he six-year statute of limitations should be applied to cases in which a fiduciary: (1) breached its duty by making a knowing misrepresentation or omission of a material fact to induce an employee/beneficiary to act to his detriment; *or* (2) engaged in acts to hinder the discovery of a breach of fiduciary duty.

*Id.* The Court found ample support for this rule in ERISA's legislative history. Citing an earlier draft of the provision which proposed a ten-year statute of limitations for claims based on "willful" misrepresentation or concealment of a material fact, the court found that, "[c]learly, Congress intended to provide a lengthier statute of limitations where the fiduciary breached its duty by misrepresenting or failing to disclose a material fact that ERISA required the fiduciary to disclose, most likely because such violations would be difficult to discover." *Id.*

Finally, the court noted that finding the plaintiffs' claims to fall under the "fraud or concealment" exception did not completely dispose of the statute of limitations issue. Rather, "[t]o get the advantage of the six-year statute of limitations, the plaintiffs must plead fraud with the requisite particularity." *Id.* at 191 (quoting Fed.R.Civ.P. 9(b), which requires that, "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity."). Finding sufficient evidence in the record to support a common law fraud claim, the Second Circuit held that the district court should have granted the plaintiffs leave to amend "in order to earn the six-year statute of limitations . . . ." *Id.* at 192.

Applying the holding in *Caputo* to the facts of this case, I find that plaintiffs

have pleaded sufficient facts to benefit from the six-year "discovery" limitations period set forth in ERISA § 1113. Plaintiffs have alleged that, by implementing pension benefit improvements on a regular basis, notwithstanding the precarious financial condition of the Fund and without providing for commensurate increases in employer contributions, the moving defendants breached their fiduciary duties under ERISA, to the detriment of the Fund participants (*see, e.g.*, Item 14, ¶¶ 66–68). Plaintiffs have also come forward with sufficient evidence to establish a genuine issue of material fact for trial as to whether the moving defendants had knowledge of the failing financial condition of the Fund, yet failed to disclose such information to participants and instead took action indicating that the Fund was financially healthy. For example, in a letter dated April 3, 1987, the Fund's actuary advised the Fund administrator (Mr. Bodewes) that the Fund would face a deficiency and penalties for the next plan year unless the contribution rate for commercial carpenters was increased by $.75 per hour (*see* Item 156, Rumelt Decl., Ex. G). This letter was followed by a second letter dated June 5, 1987, in which the actuary reiterated the need to increase the contribution rate by $.75 per hour or face the consequences of reduced pension benefits, or worse, penalties associated with failure to meet ERISA's minimum funding standards (*id.*, Ex. H). Plaintiffs allege that, notwithstanding these warnings, the trustees approved increases in commercial carpenters' monthly pension benefits for plan years 1989 through 1992, while the contribution rate was increased by only $.25 per hour on an annual basis for the years 1990 through 1992 (*id.*, Ex. I).

By way of Mr. Bodewes' affidavit (Item 164) and exhibits attached thereto, defendants have submitted documentation to support their countervailing argument that plaintiffs' concealment theory has no factual basis. According to Mr. Bodewes, the true facts of the case show that during the time plaintiffs claim the trustees increased benefits to create the illusion of the Fund's sound financial health, the contribution rate was actually increased by $2.55 per hour with no increase in benefits (*see* Item 164, ¶¶ 16–18). However, rather than providing support for dismissal of plaintiffs' claims on statute of limitations grounds, this proof merely highlights the genuine issues of material fact precluding summary judgment in the moving defendants' favor at this juncture. *Cf. Gallo v. Prudential Residential Servs. Ltd. Partnership*, 22 F.3d 1219, 1224 (2d Cir.1994) ("The trial court's task at the summary judgment motion stage of the litigation is carefully limited to discerning whether there are any genuine issues of material fact to be tried, not to deciding them. Its duty, in short, is confined at this point to issue-finding; it does not extend to issue-resolution.").

■ As in *Caputo*, finding that plaintiffs' breach of fiduciary duty claims fall under the "fraud or concealment" exception is not entirely dispositive of the issues raised by defendants' motion. Rather, to benefit from the six-year statute of limitations, the plaintiffs must plead the "fraud or [fraudulent] concealment" with the requisite particularity. *Caputo*, 267 F.3d at 191. Granting plaintiffs leave to amend in order to replead their fraudulent concealment claim would be especially prudent here, where the vast majority of the allegations in the amended complaint are focused on the conduct of the actuary (Segal, now dismissed from the case) rather than the conduct of the trustees (*see generally* Item 14). Heeding the lessons of *Caputo*, leave to amend at this relatively early stage of the litigation (prior to the deposition of the trustees with knowledge of the events and transactions at issue) should be

"freely given." Fed. R. Civ. P 15(a); *See Larson v. Northrop Corp.*, 21 F.3d 1164, 1173 (D.C.Cir.1994) (for ERISA § 1113 purposes, allegations of fraudulent concealment must meet requirements of Fed. R.Civ.P. 9(b)) (citing authority); *see also Losquadro v. FGH Realty Credit Corp.*, 959 F.Supp. 152, 157 (E.D.N.Y.1997) (discussing pleading requirements for ERISA fraudulent concealment claim).

Based on this record, plaintiffs have pleaded sufficient facts to bring their claims within the six-year provision of ERISA § 1113 so as to survive defendants' motion for summary judgment on statute of limitations grounds.

### III. Express Exemption of ERISA § 1109(b)

The moving defendants also seek dismissal of claims based on acts occurring after their service as trustees, citing ERISA § 1109(b). That section provides: "[n]o fiduciary shall be liable with respect to a breach of fiduciary duty under this subchapter if such breach was committed ... after he ceased to be a fiduciary." 29 U.S.C. § 1109(b). However, as demonstrated by the discussion above, plaintiffs have come forward with proof sufficient to bring their claims regarding the moving defendants' fiduciary conduct within the six-year statute of limitations of § 1113. This proof may also show that the moving defendants, "before their resignations, set in motion the forces which caused the actual damage of which the plaintiffs complain." *District 65, UAW v. Harper & Row, Publishers, Inc.*, 576 F.Supp. 1468, 1483–84 (S.D.N.Y.1983). Accordingly, "issues of fact exist as to when the breach, if any, occurred," *id.* at 1484, precluding summary judgment in favor of the moving defendants on plaintiffs' claims based on acts occurring after their service as trustees.

### IV. Amendment of Plan as Fiduciary Duty

Finally, the moving defendants contend that amendment of a pension plan to provide increased benefits is not an exercise of fiduciary duty actionable under ERISA, relying on a trio of Supreme Court cases beginning with *Curtiss–Wright Corp. v. Schoonejongen*, 514 U.S. 73, 115 S.Ct. 1223, 131 L.Ed.2d 94 (1995). In *Curtiss–Wright*, the Court held that under ERISA a welfare plan sponsor is free, "for any reason at any time, to adopt, modify, or terminate welfare plans" and does not act in a fiduciary capacity when it does so. *Id.* at 78, 115 S.Ct. 1223. Then, in *Lockheed Corp. v. Spink*, 517 U.S. 882, 116 S.Ct. 1783, 135 L.Ed.2d 153 (1996), the Court expanded the rule of *Curtiss–Wright* from welfare plans to pension plans, holding that "the act of amending a pension plan does not trigger ERISA's fiduciary provisions." *Id.* at 891, 116 S.Ct. 1783. Next, in *Hughes Aircraft Co. v. Jacobson*, 525 U.S. 432, 119 S.Ct. 755, 142 L.Ed.2d 881 (1999), the Court clarified that its holding in *Lockheed* does not turn on "the type of plan being amended for the simple reason that the plain language of the statute defining fiduciary makes no distinction." *Id.* at 444, 119 S.Ct. 755.

Plaintiffs contend that *Curtiss–Wright*, *Lockheed*, and *Hughes* are inapplicable because those cases refer to voluntarily maintained single-employer plans, funded and administered by the employer, as opposed to the multi-employer, "Taft–Hartley" pension plan at issue in this case, which is overseen by a Board of Trustees with equal voting strength held by representatives of the union and the employers who contribute to the fund. Plaintiffs rely on Second Circuit authorities which applied ERISA's fiduciary duty standards to plan amendments, predating the combined holdings of *Curtiss–Wright*, *Spink*, and

*Hughes Aircraft.* For example, in *Chambless v. Masters, Mates & Pilots Pension Plan,* 772 F.2d 1032 (2d Cir.), *cert. denied,* 475 U.S. 1012, 106 S.Ct. 1189, 89 L.Ed.2d 304 (1985), the Second Circuit unequivocally recognized the existence of a claim for breach of fiduciary duty against trustees of a multi-employer fund who amended a vested pension plan. *Id.* at 1038. The holding of *Chambless* was reaffirmed in *Siskind v. Sperry Retirement Program,* 47 F.3d 498 (2d Cir.1995), which held that an employer does not act as a fiduciary when it amends a single employer pension plan, but which also noted in *dicta* that valid reasons support the existence of such a claim against trustees of a multi-employer pension plan. *Id.* at 505–06. As the Second Circuit explained in *Siskind:*

> The cases holding plan amendment to be an administrative and fiduciary task concern multiemployer pension plans, jointly administered by trustees representing the employers and trustees appointed by and representing the union. In the multiemployer setting, trustees amending a pension plan affect the allocation of a finite plan asset pool to which each participating employer has contributed. For that reason trustees administering a multiemployer plan are expected to act solely for the benefit of beneficiaries and are barred from acting on the employers' behalf.

*Id.* at 506 (citations and internal quotations omitted). In contrast, the employer sponsoring a single-employer plan, "must have latitude in the sound management of its business to determine the benefits it will guarantee." *Id.* at 505 (citing *Johnson v. Georgia–Pacific Corp.,* 19 F.3d 1184, 1188 (7th Cir.1994)).

Defendants contend that the rule expressed by the Second Circuit in *Chambless* and *Siskind* recognizing pension fund trustees' amendment of a multi-employer plan as actionable under ERISA's fiduciary duty provisions has been largely displaced by the Supreme Court's *Curtiss–Wright, Lockheed,* and *Hughes* decisions. However, as plaintiffs point out, each of these Supreme Court decisions dealt with single-employer plans, and there is nothing in the express holdings of any of these cases which directly refutes the Second Circuit's rationale with respect to the nature of trustees' duties in administering a collectively bargained multi-employer plan. In the absence of any controlling authority to the contrary, the rule of *Chambless* and *Siskind* remains the law of the Circuit. The cases cited by defendants in support of their argument are neither controlling nor persuasive. *See, e.g., Walling v. Brady,* 125 F.3d 114, 117–18 (3d Cir.1997) (rejecting *dicta* in *Siskind* without discussing holding in *Chambless* ); *Boucher v. Williams,* 13 F.Supp.2d 84, 94–96 (D.Me. 1998) (involving amendment of welfare benefit plan).

In any event, the overall thrust of plaintiffs' complaint in this case is not simply that the trustees amended the "form or structure" of the pension benefit program, *Hughes Aircraft,* 525 U.S. at 444, 119 S.Ct. 755, but rather that the plan was amended to provide increased benefits to plan participants without considering the effect of those amendments on the financial integrity of the Fund or on already-accrued pension benefits. As such, plaintiffs' claims are more akin to the claims in cases which have recognized trustees' fiduciary liability for the financial consequences of plan amendments. *See, e.g., Detroit Terrazzo Contractors Ass'n v. Board of Trustees of the B.A.C. Local 32 Insurance Fund,* 176 F.Supp.2d 733, 742–43 (E.D.Mich.2001) (finding as a matter of law that, when viewed as a whole, trustees' conduct in connection with amendment of trust agreement altering makeup of board of trustees violated ERISA § 1104 because it affected the management and administration of trust assets); *Scardelletti v. Bobo,* 897 F.Supp. 913, 917–18 (D.Md.1995) (finding

allegations that former trustees of pension plan neglected to consider or investigate feasibility of plan amendments providing cost of living adjustments sufficient to state claim for breach of prudent man standard of ERISA § 1104(a)(1)(B)).

Based on this analysis, the moving defendants have failed to establish that they are entitled to summary judgment on the ground that their conduct in connection with the amendment of the pension plan to provide increased benefits is not an exercise of fiduciary duty actionable under ERISA.

## CONCLUSION

For the reasons set forth above, the moving defendants' motions for summary judgment (Items 90 and 95) are denied. Plaintiffs shall have until April 7, 2003, to file and serve an amended complaint pleading "fraud or concealment" with particularity, in accordance with the requirements of Fed.R.Civ.P. 9(b) and the matters set forth herein. Defendants shall plead in response to the amended complaint in accordance with Fed.R.Civ.P. 15(a) and all other applicable Federal and Local Rules of Civil Procedure.

The caption of this action shall be amended to read as follows:

CURTIS ZAMERSKI and RICHARD KOHL, Plaintiffs,

-vs-

TERRENCE L. BODEWES, JAMES MALONEY, VINCENT FETES, THOMAS HERR, DARYL BODEWES, GEORGE FERRARO, and JAMES BIDDLE, SR., personally and in their capacities as Trustees and plan fiduciaries, Defendants.

So ordered.