John FUCHS, as Executive Secretary–Treasurer of the Empire State Regional Council of Carpenters; Stephen Flynn, as the Eastern District Representative of the United Brotherhood of Carpenters and Joiners of America, and as Assistant Supervisor of Carpenters Local Union No. 229; Ronald Kent, as Trustee of and Participant in the Adirondack Carpenters Pension Fund and the Carpenters Local 1042/229 Health Care Fund; Leonardo Osborne; and Terry Middleton, Plaintiffs,

v.

Philip ALLEN, Individually, and as Trustee of the Adirondack Carpenters Pension Fund, the Carpenters Local 1042/229 Health Fund, and the Local 229 Carpenters Joint Apprentice and Training Fund; Stephen Pinchook, Individually, and as Trustee of the Adirondack Carpenters Pension Fund, the Carpenters Local 1042/229 Health Fund, and the Local 229 Carpenters Joint Apprentice and Training Fund; and Michael Trombley, Individually, and as Trustee of the Adirondack Carpenters Pension Fund, and the Carpenters Local 1042/229 Health Fund, Defendants.

No. 1:02 CV 1552.

United States District Court,
N.D. New York.

March 29, 2005.

Meyer, Suozzi, English & Klein, PC, John H. Byington, III, Esq., of Counsel, Mineola, NY, Attorneys for Plaintiffs.

Gleason, Dunn, Walsh & O'Shea, Ronald G. Dunn, Esq., of Counsel, Albany, NY, Attorneys for Defendant Allen.

Nixon, Peabody LLP, John E. Higgins, Esq., of Counsel, Albany, NY, Attorneys for Defendants Pinchook and Trombley.

## *MEMORANDUM–DECISION and ORDER*

HURD, District Judge.

## I. *INTRODUCTION*

On December 13, 2002, plaintiffs filed the instant complaint alleging six causes of action: (1) breaches of fiduciary duty, in violation of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1104(a)(1)(A), (B), and (D) (*First, Second,* and *Fifth* causes of action); (2) engaging in a prohibited transaction, in violation of ERISA, 29 U.S.C. § 1106 (*Third* cause of action); (3) co-fiduciary liability for knowingly participating in and failing to remedy the breaches of fiduciary duty, in violation of ERISA, 29 U.S.C. § 1105 (*Fourth* cause of action); and (4) improper receipt and acceptance of contribution payments into funds from Local 1 employers, in violation of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 186(b)(1) (*Sixth* cause of action).

There are several motions pending. Defendants Phillip Allen ("Allen"), Stephen Pinchook ("Pinchook") and Michael Trombley ("Trombley") separately, have moved for both dismissal and summary judgment on plaintiffs' causes of action relating to the Pension and Health Funds pursuant to Fed.R.Civ.P. 12 and 56. (Docket Nos. 24, 33, 39, 42.) Defendants Allen and Pinchook have moved to dismiss plaintiffs' causes of action relating to the Apprentice Fund pursuant to Fed.R.Civ.P. 12. (Docket No. 47.) Plaintiffs have cross-moved for partial summary judgment pursuant to Fed.R.Civ.P. 56. (Docket No. 26.)

Oral argument was heard on October 10, 2003, in Utica, New York. Decision was reserved at that time. Subsequently the parties advised that a settlement was possible and requested that a decision on the motions be held pending negotiations. On March 2, 2005 the Magistrate Judge advised that there would be no settlement and that the parties were awaiting a decision.

## II. *FACTUAL BACKGROUND*

The United Brotherhood of Carpenters and Joiners of America ("UBC") is an

international labor organization with authority over several local unions and regional councils throughout North America. In late July 2001, the UBC restructured its New York regional councils by creating the Empire State Regional Council of Carpenters ("Council"), which was responsible for overseeing all local unions in the state outside of New York City and certain parts of Nassau County. Plaintiff John Fuchs ("Fuchs") was appointed the Executive Secretary–Treasurer of the Council.

As part of the restructuring effort, the UBC General President ordered several local unions consolidated, including Carpenters Local Union No. 229 ("Local 229"), which retained its designation but was merged with Carpenters Local Union No. 1042. Prior to the consolidation, Local 229, Local 1042, and Carpenters Local Union No. 278 each participated in the Adirondack Carpenters Pension Fund ("Pension Fund"), a collectively bargained, multiemployer employee benefit plan. The Pension Fund is jointly administered and managed by a Board of Trustees, appointed in equal numbers by the participating local unions and employers. Particularly, each of the three local unions had the authority to designate a Trustee, called a "Union Trustee," and the participating employers had the authority to designate three Trustees, called "Employer Trustees." Prior to the merger, Local 229 had designated Allen, and Local 1042 had designated plaintiff Ronald Kent ("Kent"), as Union Trustees.

Local 229 and Local 1042 also participated in the Carpenters Local 1042/229 Health Fund ("Health Fund"), which was also a collectively bargained, multiemploy-

er employee benefit plan. It, too, permitted designation of a Union Trustee by each local union, and designation of an equal number by participating employers. Defendant Allen and plaintiff Kent were the designated Union Trustees of the Health Fund prior to the merger.

Prior to the merger of Local 1042 and Local 229, defendant Allen was the designated Union Trustee of the latter for both the Pension and Health Funds, and plaintiff Kent was the designated Union Trustee of the former for both Funds. Defendants Pinchook and Trombley, both before and after the merger, were Employer Trustees of both the Pension and Health Funds, designated by employers Glens Falls Contractors Association and Champlain Valley Builders Exchange, respectively.

Local 229 and Local 1163 [1] participated in the Local 229 Carpenters Joint Apprenticeship and Training Fund ("Apprentice Fund"), a collectively bargained, multiemployer employee benefit plan. Defendant Allen is a Union Trustee, and defendant Pinchook is an Employer Trustee for the Apprentice Fund. As used herein, "the Funds" collectively refers to the Pension, Health, and Apprentice Funds.

Around January 2002, plaintiff Fuchs first expressed interest to the funds in becoming a Union Trustee. At the time, Local 229, Local 1042, and Local 278 [2] were the participating unions in the Pension and Health Funds. The trust documents governing the two funds provided that each local union designated a Union Trustee in accordance with their bylaws,

1. Local 1163 is another local UBC union, which is otherwise not involved in this action. (Docket No. 47, Allen Aff. ¶ 7)

2. According to the complaint, Local 278 was another UBC union based in Watertown, New York. Local 278 was merged and dissolved into another union, Local 747, as part of Council's restructuring and consolidation plan.

and the employers obligated to contribute to the Pension Fund designated three Employer Trustees. On January 17 and 18, 2002, the trust document was amended to delete reference to Local 1042 in the definition of "union," since it had by then been dissolved and merged into Local 229. The Executive Boards of Local 229 and Local 278 were given the power to designate two and one Union Trustees, respectively. The trust document provided that all Union Trustees were to be eligible participants in the Pension Fund for at least two years prior to appointment. The Health Fund trust document provided that all Union Trustees were to be eligible participants in the Health Fund or Pension Fund for at least two years prior to appointment. Fuchs was not a participant in either Fund.

The amended trust document further provided that in the event Local 229 was placed into trusteeship, the removal or appointment of any Union Trustee was to be made by a majority vote—by secret ballot, conducted by a neutral organization—of the Pension Fund participants.

Prior to May 2002, defendant Allen had also been a Council representative, as well as Business Manager and Chief Executive Officer of Local 229. On May 7, 2002, plaintiff Fuchs terminated Allen from his Council representative position. Plaintiffs claim that the following day, defendants Allen and Pinchook removed records from the Local 229 offices.

On May 22, 2002, plaintiff Fuchs provided notice of defendant Allen's removal and the appointment of a new Council member as Union Trustee of the Apprentice Fund. The notice was made pursuant to the Council's bylaws, which authorized Fuchs to appoint and remove Trustees for the Pension, Health, and Apprentice Funds. The UBC's Constitution provided that uniform bylaws were to govern all of the Council's local unions. The Council's bylaws, in turn, mandated that the local unions were to adopt or amend bylaws consistent with its own. There is no dispute that Local 229 never had or adopted bylaws.

On May 23, 2002, the day after defendant Allen received the notice of his purported removal as an Apprentice Fund Union Trustee, the trust documents governing the Pension and Health Funds were again amended. The definition of "union" was changed to encompass Local 229, Local 278, and any other local union which entered into a collective bargaining agreement that obligated an employer to make contributions to the Funds. The amendments also provided that to be a Union Trustee, one had to be a participant in the Pension or Health fund. The Trustees refused to recognize Allen's removal and the appointment of the new Council member as an Apprentice Fund Trustee, citing the fact that he was not a participant in the Funds.

On May 31, 2002, plaintiffs claim defendant Allen called a special meeting of Local 229's real estate corporation for June 17, 2002, to amend the corporation's bylaws to transfer some or all of Local 229's rights in the corporation to another, as yet unnamed, local union.

Around this same time, plaintiffs allege that defendant Allen, with support from defendants Pinchook and Trombley, made it known to Local 229 members and employers party to the collective bargaining agreements under which contributions had to be made to the Pension and Health Funds, that he intended to establish a new local union that would compete with Local 229. He allegedly informed them that the new union would be financed, to some degree, by ownership interests in Local 229's real estate corporation, and that he intended to cause the new union to become a

participant in the Pension and Health Funds.

In late May to early June 2002, with support from defendants Pinchook and Trombley, defendant Allen allegedly formed Builders, Woodworkers & Millwrights Local Union No. 1 ("Local 1"). On June 1, 2002, Local 1 entered into a collective bargaining agreement with the Labor Relations Section of the Champlain Valley Builders Exchange, Inc., obligating the latter to make contributions to the Pension and Health Funds.

On June 3, 2002, after hearing of defendants Allen's and Pinchook's refusal to cooperate with the audit, the UBC appointed one of its district representatives to conduct an audit of Local 229's books and records. Plaintiffs claim that Allen and Pinchook refused to provide the representative access to certain records, including records pertaining to Local 229's real property and its real estate building corporation.

On June 7, 2002, plaintiff Fuchs again provided notice of the removal of defendant Allen as an Apprentice Fund Trustee, this time changing Allen's successor from the Council representative to himself. That same day, he provided notice of Allen's removal as Union Trustee for the Pension and Health funds, and appointment of himself to the same. The Trustees of the Funds again refused to recognize the removal and appointment.

On June 10, 2002, the UBC imposed an emergency trusteeship over Local 229 after concluding that its assets were in imminent danger of being dissipated based on the actions of defendant Allen and others in transferring Local 229's ownership rights in its real estate corporation to an unidentified local union without compensation. The order to impose the trusteeship also noted the special meeting, the refusal to cooperate with the audit, and Allen's alleged attempts to persuade employers participating in the Pension and Health Funds to cease collective bargaining obligations to the Council and Local 229.

That same day, Local 1 entered into another collective bargaining agreement, this time with Northeastern Industrial Contracting, Inc., obligating the latter to contribute to the Pension and Health Funds.

On July 3, 2002, plaintiff Fuchs provided another notice of defendant Allen's removal as Union Trustee for the Funds, and the appointment of himself as successor. The Trustees of the Funds, for the third time, refused to recognize the removal of Allen and Fuch's appointment, again citing the fact that Fuchs was not an eligible participant in the Funds.

In October 2002, after the Trustees' continued refusal to recognize defendant Allen's removal and plaintiff Fuchs' appointment as a Union Trustee for the Funds, the trust documents governing the Funds were again amended. This time, the definition of "union" was changed to expressly include Local 1, which was also given the power to name a Union Trustee. To be eligible for a Trustee position, the trust documents provided that a person had to be an eligible participant in either the Pension Fund or Health Fund. Allen was designated by Local 1 to serve as its Union Trustee for both the Pension and Health Funds.

This suit followed in December 2002.

### III. *DISCUSSION*

#### A. *Summary Judgment Standard*

Defendants move to dismiss the complaint under Fed.R.Civ.P. 12(b)(1) and 12(b)(6), or, alternatively, for summary judgment pursuant to Fed.R.Civ.P. 56. The motion has been considered as one for

summary judgment. Plaintiffs cross-move for summary judgment pursuant to Fed. R.Civ.P. 56.

Under Fed.R.Civ.P. 56, summary judgment must be granted when the pleadings, depositions, answers to interrogatories, admissions and affidavits show that there is no genuine issue as to any material fact, and that the moving party is entitled to summary judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 91 L.Ed.2d 202(1986); *Richardson v. N.Y. State Dep't of Corr. Serv.*, 180 F.3d 426, 436 (2d Cir. 1999). Facts, inferences therefrom, and ambiguities must be viewed in a light most favorable to the nonmovant. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

Once the moving party has met the initial burden of demonstrating the absence of a genuine issue of material fact, however, the nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56; *Anderson*, 477 U.S. at 250, 106 S.Ct. 2505. At that point, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec.*, 475 U.S. at 586, 106 S.Ct. 1348. Indeed, to withstand a summary judgment motion, the nonmoving party must demonstrate that sufficient evidence exists upon which a reasonable jury could return a verdict in its favor. *Anderson*, 477 U.S. at 248–49, 106 S.Ct. 2505; *Matsushita Elec.*, 475 U.S. at 587, 106 S.Ct. 1348.

**B. ERISA Claims**[3] (*First* through *Fifth* Causes of Action)

▮ In analyzing the five claims, which allege breaches of fiduciary duty[4] and co-fiduciary liability under ERISA, it is helpful to separate the particular actions of which plaintiffs complain. Specifically, plaintiffs allege that defendants breached fiduciary duties in amending the trust documents, in failing to act in accordance with the trust documents when amending the trust documents, and in refusing to recognize the removal of defendant Allen and the appointment of plaintiff Fuchs as a Union Trustee for the Funds.

**1. *Amendment of Trust Documents/Failure to Act in Accord with Trust Documents***

▮ Plaintiffs allege, in part, that defendants breached their fiduciary duties in proposing and instituting amendments to the trust documents, in violation of 29 U.S.C. §§ 1104(a)(1)(A), (B), and (D).

---

**3.** Defendants assert that plaintiffs do not have standing to bring claims under ERISA. *See* 29 U.S.C. § 1132 (permitting participants, beneficiaries, fiduciaries, and the Secretary of Labor to commence civil action); *Chemung Canal Trust Co. v. Sovran Bank/Maryland*, 939 F.2d 12, 14 (2d Cir.1991) ("[I]n the absence of some indication of legislative intent to grant additional parties to sue, the list in [§ 1132] should be viewed as exclusive"). While it is here opined that the standing issue cannot yet be determined because whether Fuchs and Allen were and are fiduciaries in the relevant respect is a question quite in dispute, *see Liss v. Smith*, 991 F.Supp. 278, 310–11 (S.D.N.Y.1998) (stating that authority to appoint and remove trustees confers fidu-

ciary status), a ruling as to the same is unnecessary in light of the fact that no breach of fiduciary claims can be asserted against defendants, *infra*.

**4.** "ERISA is a comprehensive statute designed to promote the interests of employees and their beneficiaries in employee benefit plans." *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 90, 103 S.Ct. 2890, 77 L.Ed.2d 490 (1983). To that end, the statute imposes upon plan fiduciaries certain duties when acting on behalf of the plan. *See State St. Bank & Trust Co. v. Salovaara*, 326 F.3d 130, 136 (2d Cir. 2003).

There is no question that such claims may only be maintained if defendants acted in their fiduciary capacity. "A 'person is a fiduciary with respect to a plan,' and therefore subject to ERISA fiduciary duties, 'to the extent' that he or she 'exercises any discretionary authority or discretionary control respecting management' of the plan, or 'has any discretionary authority or discretionary responsibility in the administration' of the plan." *Varity Corp. v. Howe*, 516 U.S. 489, 498, 116 S.Ct. 1065, 134 L.Ed.2d 130 (1996) (quoting 29 U.S.C. § 1002(21)(A)). Where a person acts as a "settlor," on the other hand, fiduciary duties are not implicated and no cause of action asserting breach of the same may be maintained. Thus, the operative question here is whether amending the trust documents is considered a fiduciary or settlor function.

The Second Circuit, in contrasting the amendment of a single employer plan, has stated that "[i]n the multiemployer plan context, courts have treated plan amendments as fiduciary functions, invalidating amendments not made in furtherance of the participants' and beneficiaries' interests." *Siskind v. Sperry Retirement Program*, 47 F.3d 498, 505–06 (2d Cir.1995) (citing, *inter alia, Chambless v. Masters, Mates & Pilots Pension Plan*, 772 F.2d 1032, 1040 (2d Cir.1985)). Defendants contend, however, that subsequent Supreme Court decisions "make it clear that *Siskind* and *Chambless* have been overruled." (Docket No. 41, p. 22) (citing *Hughes Aircraft Co. v. Jacobson*, 525 U.S. 432, 119 S.Ct. 755, 142 L.Ed.2d 881(1999); *Lockheed Corp. v. Spink*, 517 U.S. 882, 116 S.Ct. 1783, 135 L.Ed.2d 153 (1996); *Curtiss–Wright Corp. v. Schoonejongen*, 514 U.S. 73, 115 S.Ct. 1223, 131 L.Ed.2d 94 (1995)).

In *Curtiss–Wright*, the Court held that "[e]mployers or other plan sponsors are generally free under ERISA, for any reason at any time, to adopt, modify, or terminate welfare plans," without such actions coming within the purview of fiduciary scrutiny. 514 U.S. at 78, 115 S.Ct. 1223. In *Spink*, this holding was applied to pension plans. 517 U.S. at 890–91, 116 S.Ct. 1783 (stating also that "[w]e see no reason why the rule of *Curtiss–Wright* should not be extended to pension benefit plans"). Finally, the Court most recently in *Hughes Aircraft* reaffirmed *Curtiss–Wright* and *Spink*, and clarified that the principle announced therein applies with equal force no matter what type of plan is at issue. 525 U.S. at 444, 119 S.Ct. 755.

It is undisputed, however, that all three of these decisions were issued in the context of a single employer plan, not a multiemployer plan, which is at issue here. While the Court's statement in *Hughes Aircraft*, that the type of plan at issue is irrelevant, could be read to extend the principle to the multiemployer plan context, simple reference to the opinion itself makes clear that such a reading was not intended. Specifically, the Court made the statement in the context of rejecting the distinction drawn by the Ninth Circuit between plans requiring employee contribution—to which the panel refused to apply the principle—and plans not requiring employee contribution—to which the panel stated the principle was applicable, *Jacobson v. Hughes Aircraft Co.*, 105 F.3d 1288, 1293 (9th Cir.1997); *Hughes Aircraft*, 525 U.S. at 444, 119 S.Ct. 755 (declining to draw the distinction "for the simple reason that the plain language of [ERISA] makes no[ne]").

While the Second Circuit has not yet had occasion to address the issue, the Western District of New York has refused to extend the rule announced in *Curtiss–Wright*, *Spink*, and *Hughes Aircraft* to the multiemployer context. *Burke v. Bodewes*,

250 F.Supp.2d 262 (W.D.N.Y.2003). In *Burke,* the plaintiffs claimed, *inter alia,* that current and former trustees of a multiemployer plan breached fiduciary duties in amending the plan to provide increased benefits. The court rejected the defendants' reliance on the three Supreme Court cases, stating that because they involved single employer plans, the rule announced in *Chambless* and reaffirmed in *Siskind*—that amending a plan was a fiduciary function in the multiemployer context—remained the law of the land in the Second Circuit. *See id.* at 270. The court also found remarkable the fact that the plaintiffs were not challenging an amendment to the form or structure of the plan, but rather amendments that "provide[d] increased benefits to plan participants without considering the effect of those amendments on the financial integrity of the Fund or on already-accrued pension benefits." *Id.*

For this statement, the court cited *Detroit Terrazzo Contractors Ass'n v. Bd. of Trs. of the B.A.C. Local 32 Ins. Fund,* 176 F.Supp.2d 733 (E.D.Mich.2001), upon which plaintiffs also rely heavily in arguing that the amendments here were fiduciary actions. The court in that case, instead of outright refusing to apply the Supreme Court's principle to the multiemployer context, stated that the three cases compelled it to "examine the conduct at issue to determine whether it constitutes 'management' or 'administration' of the plan, giving rise to fiduciary concerns, or merely a business decision that has an effect on an ERISA plan not subject to fiduciary standards." *Id.* at 742. As the amendments at issue changed the composition of the board of trustees and were contrary to the governing trust documents, the court found that it "affected the management and administration of Trust assets [by] . . . alter[ing] the composition of the trustees responsible for managing the Trust assets." *Id.* at 743.

Defendants contend, however, that *Burke* and *Detroit Terrazzo* were erroneously decided, and inconsistent with the majority of courts that have assessed whether the rule announced in *Curtiss–Wright, Spink,* and *Hughes Aircraft* should be extended to multiemployer plans. Directly contrary to *Burke,* the D.C. Circuit has stated that amending a multiemployer plan to affect retirees' benefits is not a fiduciary function. *Hartline v. Sheet Metal Workers' Nat'l Pension Fund,* 286 F.3d 598, 599 (D.C.Cir.2002) ("Nothing in the Supreme Court's decisions or ERISA itself creates an exemption for multiemployer pension plans.... [The] trustees involved in this case did not act in a fiduciary capacity when they made changes affecting the determination of appellees' benefits."), *aff'g* 134 F.Supp.2d 1 (D.D.C.2000).

The lower court in *Hartline* declined to follow *Siskind* and *Chambless* "precisely *because* they pre-date the Supreme Court's more recent decisions in [*Spink*] and *Hughes [Aircraft].*" 134 F.Supp.2d at 12 (emphasis in original). Also noteworthy from the district court's opinion is its ruling that the Supreme Court's use of the term "plan sponsor" actually did encompass trustees of a multiemployer plan even if it was being used in "generic sense," because "Congress has given that term a specified and technical meaning in the context of ERISA plans." *Id.* Specifically, multiemployer trustees are expressly included within the statute's definition of "plan sponsor." *Id.* (citing 29 U.S.C. § 1002(16)(B)[5]).

---

**5.** 29 U.S.C. § 1002(16)(B) defines a "plan sponsor," "in the case of a plan established or maintained ... jointly by one or more employer and one or more employee organiza-

Likewise, the Third Circuit also agreed that the Court's use of "plan sponsor" evinced an intent to extend its holding to multiemployer plans. *Walling v. Brady,* 125 F.3d 114, 118 (3d Cir.1997). The court also addressed whether *Siskind* and *Chambless* are now "obsolete" in light of the subsequent Supreme Court decisions. While distinguishing *Siskind* on the facts from the case before it, the panel nonetheless questioned the wisdom of the Second Circuit's distinction between single employer and multiemployer plans. As noted by the panel in *Walling,* "the sole reason *Siskind* articulated for [making such a] distin[ction]" was the presence in the multiemployer context of a "finite asset pool." *Id.* at 118. This reason the Second Circuit derived from the Sixth Circuit's opinion in *Musto v. American General. Corp.,* 861 F.2d 897, 912 (6th Cir.1988). However, as noted by the court in *Walling,* 125 F.3d at 118, a contrary Sixth Circuit case, decided after *Musto* but before *Siskind,* rejected the "dictum" in *Musto* and found little if any reason to distinguish between amending a single employer plan and a multiemployer plan. *See Pope v. Central States S.E. & S.W. Areas Health & Welfare Fund,* 27 F.3d 211, 213–14 (6th Cir.1994).

That the dictum in *Musto* has been rejected in the Sixth Circuit, however, does not make the *Siskind* panel's embrace of it any less persuasive in the Second Circuit. The court in *Siskind,* in fact, cited *Pope* as contrary authority to the proposition that courts have treated amendment of a multiemployer plan as a fiduciary function. 47 F.3d at 505–06. Thus, its favorable citation of *Musto* was not made in ignorance of *Pope's* rejection of the same. The same reasoning applies to *Detroit Terrazzo,* which was overruled by the Sixth Circuit

in an unpublished opinion, 71 Fed.Appx. 539 (6th Cir. Aug.6, 2003), after the court in *Burke* issued its opinion. It should be noted, however, that the invalidation of both *Musto* and *Detroit Terrazzo* leaves the view in *Siskind* and *Chambless* without any support in the post-*Hughes Aircraft* era, save for *Burke,* and plenty of opposition, *see, e.g., supra.*

It is not necessary here to determine whether *Siskind* and *Chambless* remain the law of the land in the Second Circuit, or which interpretation of the relevant Supreme Court decisions is correct, because of the factual differences of this case. The underlying reason cited by both *Siskind* and *Burke* for declaring the amendment function at issue as fiduciary was its effect on the finances of the multiemployer plan. The amendments in *Burke,* for example, increased benefits to participants without assessing the financial impact of the same to the plan. The Second Circuit in *Siskind,* while broadly stating that *Chambless* treated amending as a fiduciary function, clarified that the reason for doing so was because of the effect an amendment would have on the plan's "finite pool of assets."

This view—that even assuming an amending trustee of a multiemployer plan acts as a fiduciary—does so only to the extent that the fund is financially impacted by the amendment—is arguably reflected in an even more recent, post-*Hughes Aircraft* decision by the Second Circuit. *See Harris Trust & Savings Bank v. John Hancock Mut. Life Ins. Co.,* 302 F.3d 18, 28 (2d Cir.2002) (agreeing with the Seventh Circuit that " '[t]he 'management or disposition' language in ERISA refers to the common transactions dealing with a pool of assets: selecting investments, exchanging one instrument or asset for an-

---

tions," as "the ... joint board of trustees, or other similar group of representatives of the

parties who establish or maintain the plan."

other, and so on.'") (quoting *Johnson v. Georgia–Pacific Corp.*, 19 F.3d 1184, 1189 (7th Cir.1994)).

Such a limitation on the reach of *Siskind/Chambless* (and *Burke*, for that matter) is also consistent with the well established principle that focus is to be placed upon the actual challenged conduct of each case when determining if a person fits within ERISA's definition of "fiduciary," 29 U.S.C. § 1002(21)(A). *See LoPresti v. Terwilliger*, 126 F.3d 34, 40 (2d Cir.1997) (stating that determination of whether person fits statutory definition of fiduciary in engaging in challenged conduct is "functional," rather than tied to official title).

Here, while plaintiffs indeed complain that defendants failed to undertake a study addressing the financial effect of the amendments, they lodge no assertion that the amendments did, or even had the potential to, impact the financial integrity or stability of the Funds. Indeed, plaintiffs do not appear to dispute that Local 1 was comprised of former Local 229 members, thereby at no point making the contributions flowing into the Funds less than they had been before. With no alleged or apparently possible financial detriment to the Funds, no breach of fiduciary duty action may be maintained on the basis of the amendments.

The arguments that a distinction must be drawn between amendments to an actual plan—such as changing the method by which benefits are determined—and amendments to the governing documents—such as changing the appointment and removal procedures of trustees—are rejected. The question is the same for both types of amendments—does it affect the financial integrity (i.e., management and administration, pool of assets) of the Funds? Disagreement is expressed with the court in *Detroit Terrazzo* insofar as it answered the question in the affirmative

with respect to amendments to the appointment or removal process for trustees. The trustees' obligation to manage the investments and financial aspects of the Funds is not rooted in any particular trustee in office. That duty is always there, regardless of who is appointed or elected trustee, and regardless of the method by which the trustees are chosen. Amending the removal and appointment procedures has no direct effect on the finances of the Fund.

■ Accordingly, the complaint must be dismissed to the extent that plaintiffs base their breach of fiduciary duty claims on the act of amending the trust documents. Likewise, because the act of amending is central to plaintiffs' claim that defendants failed to act in accordance with plan documents, the breach of fiduciary duty claims must also be dismissed to that extent.

### 2. *Refusal to Recognize Removal of Defendant Allen and Appointment of Plaintiff Fuchs*

Plaintiffs also allege, however, that defendants breached their fiduciary duties in refusing to recognize the removal of Allen and the appointment of Fuchs. Though this alleged failure is partially tied into the act of amending, at least to the extent their response to the appointment and removal was to amend, by itself it also appears to be a different basis for the claim. However, the act of refusing to recognize a removal and appointment notice is not a fiduciary act.

■ As noted, "[a] 'person is a fiduciary with respect to a plan,' and therefore subject to ERISA fiduciary duties, 'to the extent' that he or she 'exercises any discretionary authority or discretionary control respecting management' of the plan, or 'has any discretionary authority or discretionary responsibility in the administra-

tion' of the plan." *Varity Corp.*, 516 U.S. at 498, 116 S.Ct. 1065 (quoting 29 U.S.C. § 1002(21)(A)). " 'Under this definition, a person ... has [fiduciary] status only 'to the extent' that he exercises the described authority or responsibility.' " *Flanigan v. Gen. Elec. Co.*, 242 F.3d 78, 87 (2d Cir. 2001) (quoting *F.H. Krear & Co. v. Nineteen Named Trustees,* 810 F.2d 1250, 1259 (2d Cir.1987)).

■ The decision to not recognize plaintiff Fuchs' order removing defendant Allen and appointing himself as a Union Trustee did not implicate any of the Funds' assets or otherwise work to the financial detriment of the Funds. It was a decision pertaining to, at most, the form or structure of the Funds. It was not among " 'the common transactions dealing with a pool of assets, [such as] selecting investments, exchanging one instrument or asset for another, and so on.' " *See Harris Trust,* 302 F.3d at 28 (quoting *Johnson,* 19 F.3d at 1189).

Plaintiffs make no allegation that defendant Allen was using his position as a Union Trustee, in failing to recognize Fuchs' removal of him, to divert contributions out of the Funds. Plaintiffs make no allegation that the former Local 229 members Allen allegedly persuaded to join Local 1 became participants in competing funds. Indeed, plaintiffs do not appear to dispute that these members' participation in the Funds was, in effect, seamless and at no time decreased the participant population in the Funds. Therefore, regardless

of whether plaintiff Fuchs had the authority to remove and appoint defendant Allen as a Union Trustee for the funds,[6] the act of refusing to recognize that authority was not fiduciary in nature, and plaintiffs cannot assert breach of fiduciary claims under ERISA based thereon.

This is not to say that defendants' behavior was not suspicious, or even underhanded. Indeed, according to plaintiffs, defendants' conduct has been the subject of no less than three unfair labor practice complaints and another civil complaint filed in the Northern District of New York under the Labor–Management Disclosure Reporting Act, 29 U.S.C. § 501, and the LMRA, 29 U.S.C. § 185(a). (Docket No. 1, Complaint ¶¶ 45, 46, 49; *United Bhd. of Carpenters & Joiners of Am., et al. v. Allen, et al.,* 02–CV–850). It is merely held here that plaintiffs have no recourse under ERISA for defendants' alleged conduct.

Therefore, plaintiffs' *First, Second, Third, Fourth,* and *Fifth* causes of action will be dismissed.[7]

### C. *Labor Management Relations Act Claim (Sixth Cause of Action)*

This claim is brought pursuant to § 302 of the LMRA, 29 U.S.C. § 186. Plaintiffs assert that "defendants, as Trustees and fiduciaries of the Pension Fund and Health Fund, have received and accepted employee benefit contribution payments into the Pension Fund and Health Fund from em-

---

**6.** At best, this question could reasonably be answered either way. The bylaws of the Council, which purport to give Fuchs the power of appointment and removal, instruct local unions to amend their bylaws to be consistent with the Council's. There is no dispute that Local 229 did not so amend their bylaws. It is unclear whether the Council had an affirmative obligation to ensure that the local unions amended their bylaws or, in the case of Local 229, which had no bylaws, adopted bylaws.

**7.** In the *fourth* cause of action, plaintiffs allege that all of the defendants are liable for each others' breaches of fiduciary duty, pursuant to 29 U.S.C. § 1105(a). Because the acts alleged by plaintiffs were not undertaken in defendants' fiduciary capacity, however, this claim must be dismissed.

ployer(s) which have signed the Local 1 collective bargaining agreement." (Docket No. 1, Complaint ¶ 97). The parties interpret or frame this claim in two ways throughout the moving papers, but the claim is not viable under either reading.

■ On one hand, plaintiffs complain that § 302(b)(1), 29 U.S.C. § 186(b)(1) of LMRA was violated. *Id.* ¶ 146. That section provides that "it shall be unlawful ... to receive, or accept, or agree to receive or accept, any payment or thing of value prohibited by subsection (a)." In short, subsection (a) prohibits the giving of payments to various parties engaged in representing employees or labor organizations.

Section 302(c) lists exceptions to this bar for payments made, *inter alia*, into proper employee funds. The provision excepts payments "paid into a trust fund established by such [an employee] representative, for the sole and exclusive benefit of employees." 29 U.S.C. § 186(c)(5). Plaintiff asserts that "neither the Pension Fund nor the Health Fund are a trust fund established by Local 1 and/or Local 1 together with employers, as 'representative[s], for the sole and exclusive benefit of the employees.'" *Id.* at ¶ 144. Plaintiffs argue that the Funds were established by Local 229 monies and representatives, not the representatives of Local 1 employees. In other words, plaintiffs argue that payments may not be made into otherwise proper, pre-existing ERISA employee funds, and likewise, receiving payments from representatives other than from the fund founders violates the LMRA. Plaintiffs fail to cite a single case to support this proposition.

Absent any authority to support such a claim, there is no apparent reason to presume that Congress intended to bar such payments.

[Section 302], which was principally intended to protect the collective bargaining process by eliminating the corruptive influence of side payments by employers to union representatives, 2 U.S.Code Cong. & Ad. News, 86th Cong., 1st Sess., at 2326–27 (1959), prohibits anyone...who acts in the interest of an employer to ... agree to pay, lend, or deliver, any money or other thing of value (1) to any representative of any of his employees ... or (4) to any officer or employee of a labor organization ... with intent to influence him in respect to any of his actions, decisions, or duties ...

*Haley v. Palatnik*, 509 F.2d 1038, 1041 (2d Cir.1975). *See United Steelworkers of America v. United States Gypsum Co.*, 492 F.2d 713, 734 (5th Cir.1974) ("purpose of § 302(a) is to protect employers from extortion and to insure honest, uninfluenced representation of employees.")

While the complaint alleges a variety of wrongful acts, it does not list any allegations or facts to suggest any defendant interest in, or attempt to effect, the collective bargaining process between Local 1 employers and their respective employees. The complaint itself notes that the payments received were made on behalf of Local 1 employees pursuant to a collective bargaining agreement. (Docket No. 1, Complaint ¶ 146) As noted above, plaintiffs complain of the amendment procedures concerning trustees. However, plaintiffs have not made any allegations disputing that the payments are held solely for the benefit of employees and their families or dependents. Plaintiffs simply have not demonstrated that receipt of these otherwise presumably lawful and made-in-good-faith employer payments supports a claim under § 302(b)(1).

■ On the other hand, plaintiffs argue that the mere receipt of the Local 1 Funds into the Fund holding Local 229 Funds is

improper under § 302, 29 U.S.C. § 186(c)(5). The § 302(c)(5) exception that allows such payments requires that "employees and employers are equally represented in the administration of such fund." Plaintiffs assert that any representative "purportedly designated by Local 1 as a Union Trustee" is not a proper representative for LMRA purposes. *Id.* at ¶ 145.

The claim may be read to argue that since the Local 1 representative is not a legitimate representative, the employee portion of the representation required under § 302(c)(5) is defective, and thus representation within the Fund itself is improper. This purported defective representation allegedly disqualifies the Fund from falling within the exception.

■■■ Plaintiff seeks to invoke the courts injunctive powers under § 302(e), 29 U.S.C. § 186(e), to prevent "the putting in place and/or giving effect to the amendments to the Trust agreements that make receipt of the Local 1 funds possible." Such relief would amount to federal court oversight of fund amendment procedures to ensure compliance with § 302(c)(5). The Supreme Court could not have been clearer in explaining that § 186(e) does not provide such relief in stating: "We hold today that § 302(e) does not provide authority for a federal court to issue injunctions against a trust fund or its trustees requiring the trust funds to be administered in the manner described in § 302(c)(5)." *Local 144 Nursing Home Pension Fund v. Demisay,* 508 U.S. 581, 587–589, 113 S.Ct. 2252, 124 L.Ed.2d 522 (1993).

It is also noted that the alleged defect in representation would not implicate the substantive concerns of the exception provision. "The statute is aimed at balancing the interests of employers as a group with employees as a group; it is not concerned with the allocation of power within either group." *International Brotherhood of Teamsters, Joint Council 18 v. New York State Teamsters Council Health & Hosp. Fund,* 903 F.2d 919, 922 (2d Cir.1990). The amendment allowing for Local 1 representation did not quantitatively diminish employee representation in relation to employer representation. It simply shifted it from one employee representative to another. "The section 'only requires equality between the trustees representing the unions and those representing the employer, and not parity between the representatives of each union.'" *Id.* (quoting *Culinary & Service Employees Union, Local 555 v. Hawaii Employee Benefit Administration, Inc.,* 688 F.2d 1228, 1231–32 (9th Cir.1982)). Jurisdiction cannot be exercised under § 302(e) to regulate fund administration in the manner described in § 302(c)(5) or to avoid application of a substantively inoffensive amendment

## IV. CONCLUSION

The actions of defendants—amendment of trust documents and refusal to acknowledge the removal of defendant Allen as a union trustee—are not fiduciary acts actionable under ERISA. Plaintiffs' LMRA claim fails as jurisdiction is lacking concerning the alleged structural defects of the Funds, and plaintiffs have not shown that otherwise proper employer payments may not be made into an existing benefit fund.

Accordingly, it is

ORDERED that

1. Defendants' motion for summary judgment is GRANTED;

2. Plaintiffs cross-motion for partial summary judgment is DENIED; and

3. The complaint is DISMISSED in the entirety.

The Clerk of the Court is directed to enter judgment accordingly.

IT IS SO ORDERED.